Our final case of the morning is Stepp v. Lockhart, et al., No. 257038. Counsel, you may proceed. Good morning. May it please the Court? My name is Adam Breipel, and I am present on behalf of all of the appellants other than Kevin McLean. And I do intend to reserve five minutes, or as close as I can, for Counsel for McLean. So there are a lot of parties and claims in this appeal. I assume we're probably not going to have time to address each and every one in a lot of detail. So I'd like to focus on some overriding issues that I believe govern this Court's analysis of all claims. First, I think it bears emphasis how complex and unusual, compared to the average school civil rights case, the fact pattern is that's alleged in this case. It arises out of a situation where Tallahanna Public Schools, for a certain period of time, had a policy in place in which classroom assignments were based on sex, such that there was a boys' classroom and a girls' classroom. And some of the issues on this appeal relate to the facial lawfulness or unlawfulness of that policy. In the boys' classroom, there's also allegations that Appellant McLean engaged in inappropriate remarks and yelling and things like that directed towards the minor plaintiff, J.S. And so some of the claims deal with who, if anyone, is liable for that conduct. His parents filed a Title IX complaint regarding those issues, and there are issues in this appeal regarding how that appeal was processed. There are issues related to a change in the way that J.S. was provided with an education after the complaint was initiated and while it was being processed. And then finally, there are allegations of post hoc retaliation against the plaintiffs, J.S. and the Stepp family. The important thing is that not every individual defendant in this case is alleged to have been involved in the same way or to the same degree every step along the way. And what that means is that it's particularly important that a court evaluating the issue of qualified immunity as to these individuals focus in on the specific conduct and knowledge and role of each individual and not to paint them with the same brush regardless of what they're actually alleged to have done. Ever since Twombly and Iqbal were handed down, the appellate courts have made it very clear that it's particularly important that a plaintiff allege specifically who is alleged to have done what to whom in order to serve two purposes, both to give the defendant a fair knowledge of both the factual basis and legal theory for the claim that's asserted against them and to allow the courts to evaluate whether a plausible claim has actually been alleged. Counsel, I take your point about personal participation. I'm not sure we're going to have the time to kind of work through each and every claim with each and every defendant. I mean, that's something we're going to have to study.  In terms of the complaint and the arguments you've made. I don't want to throw you too far off course on your basic points, but I know we're going to have a number of questions about the specific claims. Are you ready to take those at this point? Certainly. Whenever you're honored, I'd like to jump in on that. All right. I will. I'd like to start with the, as you said, there are a lot of claims and you're representing everyone but Mr. McClain, correct?  All right. So tell me on the procedural due process claim. Why doesn't the complaint adequately allege a deprivation of a property interest in public education based on the segregated classroom policy? So it's, you know, it's established that there is a property interest in education on behalf of a student. But the case law doesn't go as far as saying that every aspect of the way that an education is provided falls within the protected property interest. For example, we cited the Zamora case where a student was taken as a result of discipline, was required to go from the normal high school to an alternative high school that didn't offer sports and allegedly wasn't, you know, as preferable of a placement for that student. But this court explained that he was still being provided an education. So the specific setting that the education was being provided in didn't raise to the level of a constitutional deprivation. So in this case, what's alleged is that J.S., after he, his parents made this complaint regarding McClain, that he was taken out of the classroom and put on a remote, you know, out of school educational setting. So that is different than an out of school suspension where, as a student, you're out of school, you're not being provided with an education at all. So, but just to make sure that I understand the facts that are relevant to this argument, that the modified plan went on for six weeks and J.S. was given an hour of instruction per day. Is that correct? There's actually two different changes that were made based on the allegations of the complaint, of course, since we're at the motion to dismiss stage. So initially, when the complaint was made, I believe they say the same day that they made the complaint, J.S. was sent home and put on a remote education. And they do say he was sent home with work to complete and continue to receive grades. The amount of time that went on is not specified. But at a certain point, there was a discussion about, you know, how he would be educated going forward. And they allege they didn't want him to go back into Mr. McClain's class and they didn't want him to continue on this remote plan. And so instead, what they did was kind of a hybrid schedule where he spent some of he was at school receiving one on one instruction. So it's your position, if I understand it, that a suspension is what would trigger the deprivation, not the facts here. Yes, if it's I would look at it as there's levels. If it is an out of school suspension, you are out of out of school, not receiving an education for more than 10 days under Goss. You have due process and a full hearing. Right. If it's a short term out of school suspension, but due process is still triggered, but a lower level of process is required. So that could just be notice of the right or notice of the charges right to respond to them. Then the next level would be if there is, for example, taking a student and putting them in virtual rather than in-person instruction. I don't believe that the case law establishes that it's clearly established that that implicates a student's property. Right. Think about it. About six years ago in 2020, a lot of schools were putting people on remote education and schools didn't have to provide a due process hearing for each student that may have their parents may have not approved of that. In the second phase, he got one hour of language arts and otherwise it sounds like he was just kind of parked in the library is the way I pictured it. You're saying one on one instruction. Was he instructed all day long in each of the subjects? This is a tough one because I'm trying to stay within the allegations of the complaint. But I think the important thing is that they do allege that there was some instruction provided during the day in person. And that if you look at the allegations regarding this time frame, they're pretty clear that he you can't continue to receive work to do. If you're not receiving an education, you can't continue to receive grades if you're not being provided with an education. But as far as drawing lines and an alternative high school, that's one thing you're going to classes, you have math, you have social studies, whatever else. But here, what the way that I read it, it's just he's kind of cast off. Go to the girls class or else. Well, I think it's important to keep in mind that the question here isn't whether it was a action that would implicate due process to put him on that schedule. It's whether it was clearly established because that's what would be necessary for it to be a basis to deny qualified immunity to the individuals that were involved in that. Did the district court reach a ruling on that? That is kind of the overriding issue that I wanted to get to is if you look at the district court's order, the issue of clearly established law really is not specifically addressed on most of the claims. The two prongs of the qualified immunity analysis need to be, they're related. They don't necessarily have to be addressed in Section 3A, 3B, but they both have to be addressed. And that wasn't done and we believe it's error. And I'm happy to ask, to field more questions if you have them, but I'd like to reserve the rest of my time. I think we're just getting started. Let me ask you about the equal protection claim. So the school district, the school decide to segregate classes based on sex. Why isn't that at least the beginning of an equal protection claim? You've got a protected category. You're distinguishing on the basis of sex. Doesn't the school district need to satisfy intermediate scrutiny to justify having done that? I would say that with the procedural posture we're in, the plaintiffs had the burden to prove both, or to show that it's clearly established that this policy both is unlawful and that the proffered justification fails intermediate scrutiny. There's limited information in the record that's before us right here about the reasons for the policy, but it had to do with being able to address issues related to proper conduct and then also to have frank conversations that couldn't take place in a school setting. So I would submit that it would be the plaintiffs' burden to show that it's clearly established. You're jumping to prong two again. Exactly. All right. We could spend a lot of time on each one of these, but I'm going to move on. Can I ask a follow-up question on the equal protection claim? Can you help me understand, in your opening brief in discussing the equal protection claim, you argue that plaintiffs failed to allege conduct that would constitute deliberate indifference. And I'm not sure I understand how that fits if we're looking at this as a sex separation policy under intermediate scrutiny. Well, I think there has been some confusion. If you look at the record about what the theory behind, we're talking about count five, as I read it, as to what the theory is. And there's been some discussion where it is more of a facial challenge to the policy. And there's been some other discussions where it's more of a theory of by putting in place this policy, it's said about the chain of events in motion that led to J.S. being sexually harassed allegedly by McLean. So there's two different theories that are discussed. Okay, I'm going to jump to count seven, which is the conspiracy claim. If I'm reading the district court opinion correctly, correct me if I'm wrong, but it seemed like the district court didn't rely on qualified immunity to dismiss it. It said, didn't rely on qualified immunity to deny your motion. Why do we have interlocutory jurisdiction to address count seven if it's not a qualified immunity ruling? Well, I think it would be a little bit different than other claims because my clients raised the qualified immunity defense as to all the Section 1983 claims. And so I think that puts it on the incumbent on the plaintiffs to overcome the presumption of qualified immunity that attaches once it's raised. Well, but if the district court didn't rule on qualified immunity grounds, then why are we even talking about it now? I think our position would be that the district court needed to address that in order to keep them in the case going forward because they're presumed... If you're arguing that they failed to address it, wouldn't we just send it back? That may be, if that is the way that the court chooses to view it, then that could be a way that that could be disposed of. But I think our position would be that once it's raised, with regard to several of the claims, the claims qualified immunity is kind of discussed up at the start of the Section 1983 claims. And then it's kind of only implicitly discussed. All right. I mean, let me just preface my next question. I'm asking you a few of these things to see if we can get our arms around the scope of what we're dealing with on this appeal. So the next one is more just a matter of asking you whether you're challenging the denial of the motion to dismiss count nine, because I didn't see discussion of that in your brief. But again, I might have missed something. So is it there? Of course, I'm over time. I'll answer your question. There's two different retaliation claims. One of them is count six, and one of them is count nine. And I think we addressed them in the same proposition. So what you're saying is that you covered both? Yeah, it's the same analysis. It's just against different defendants. OK. All right. Well, I'm going to hold off for now, unless we may want to hear from you again, even though you're over time now. So don't go anywhere. All right. Thank you, Your Honor. Oh, I'm sorry. We have Mr. Callaway. Maybe we ought to hear from you. He wanted to give you five minutes, and I had a feeling this was going to happen. Let's give him five minutes. Thank you. And may it please the Court, my name is Jason Callaway, here on behalf of Appellant Kevin McLean, who is asking this Court to reverse the lower court's decision to deny qualified immunity on Appellee's substantive due process and equal protection claims. And I'll turn to the substantive due process claim first, because it's a little bit more straightforward. On substantive due process, the analysis is always, does this shock the judicial conscience? This is an incredibly high standard. It has to be something more than negligent injury. It has to be something more than reckless injury, misuse of government power. It has to be something higher than that. And I think this Court, back in 1996, essentially decided this question for us. In the Abeyta decision, Abeyta v. Chama Valley Independent School District No. 19, the Court said it is theoretically possible for verbal abuse alone to constitute a deprivation of a student's substantive due process rights. But first, it would need to be equivalent to forced stomach pumping. So whatever it would need to be, it would have to be the equivalent of that. And second, more importantly— How would you ever get the equivalent of that? I don't know. But this Court allowed it as a possibility. Second, and more importantly, the facts of that case did not meet that standard. And I say that's important because we view the facts of this case, as alleged in the Second Amendment complaint, as, at minimum, no worse than what was alleged in Abeyta. So you're arguing now the clearly established prong? We're arguing both, that under Abeyta there was no constitutional violation at all. But if this Court were to decide there was a constitutional violation, that Abeyta was the clearly established law, and that Mr. McClain would not have known at the time, on knowing what Abeyta said, that this Court would subsequently decide differently now. Well, what if there is, hypothetically, a determination that the conduct shocked the conscience? How does that—I mean, we're used to dealing with the clearly established law in a lot of other contexts. But this one, I'm curious how courts are supposed to evaluate conscience-shocking conduct under clearly established law. Because one of the ways to get to clearly established law is when the conduct is obviously a constitutional violation. So if something shocks the conscience, why wouldn't it be obvious? How do the two prongs interact in a substantive due process shock the conscience context? I think in this particular context, the educational context, and specifically verbal abuse alone, essentially what courts have said is that it never shocks the conscience. Well, that wasn't my question. I'm asking you to assume it does. Okay. Assume prong one. A reasonable jury, presented with the facts alleged in the complaint, would find that Mr. McClain's conduct was egregious, outrageous, and conscience-shocking. All right. So, again, hypothetically. But let's assume that. Because what I want to know is, if you've got that in hand, how can you not have prong two? Essentially because courts have so frequently said that this is not conscience-shocking. So if there were to be facts at some point in the future that met what this court said in a beta, you know, that there is verbal assault equivalent to forced stomach pumping, if you've got those facts, whatever they may be, you could say, here, this here is enough. So if we decide prong one in favor of the plaintiffs, but really decide it, and you still win on clearly established, then the next case may solve Judge Matheson's question. Is that your position? Yes, Your Honor. But if you lose on the first prong here, back to Judge Matheson's question and the follow-up, sometimes you don't have to have a case directly on point from the Supreme Court or the Tenth Circuit. The conduct is just so bad that we say every person except incompetence of those willfully violating the law would know. And so I understand if a beta says what it says and the allegations there are what they are. I don't think they're as bad as they are here. So if they're worse here and we said that's conscience-shocking, good enough, couldn't we just say on prong two it's clearly established because anybody would know that this violates the Constitution? And I think that goes back, and I'm sorry I'm out of time. I'd like to finish answering if I can.  I think that goes to the fact that no one has found conscience-shocking behavior in verbal abuse alone. If no one has ever found it, then it seems like by definition if one court finally does, you would have to say, well, it wasn't clearly established before that that meets the standard because nothing ever has before now. Unless it's egregious enough. If it's egregious enough to be equivalent to forced stomach pumping, then it would under a beta already be clearly established because that's what this court has said would be what it takes. Thank you. Thank you, Counsel. All right. We'll move to Pelley, Mr. Johnson. May it please the Court and good morning, Your Honors. My name is Blake Johnson. With me is my co-counsel, Kelsey Schrimmer, and we represent the Plaintiff Appelese, the Steppe family. This court should affirm the decision below because in 2022, no reasonable state actor would doubt that the Constitution prohibits the segregation of public school classrooms by sex, a teacher's aggressive sexual harassment and gender bullying of an 11-year-old boy, or a campaign of retaliation against parents who filed a Title IX complaint. In each of these questions, the answer was and is clearly established. I think as an organizational... You're asking us to make assumptions about the legal analysis on the face of a district court order that seemed in part, tell me if I should be thinking about it differently, but at least to me seemed in part to conflate the first and second prongs of qualified immunity. And why isn't that reversible error? Well, I do see it a bit differently, Your Honor. I think the correct answer to your question, to opposing counsel, was that the district court did in fact decide that with respect to the procedural due process challenge, there was clearly established law in the question. The district court's order in the McLean appeal at page 12, and then the other appellant's appeal at the order of pages, I believe, 22 to 23, both clearly cite this court's decision in Couture as well as the Supreme Court's decision in Goss as the clearly established law on the procedural due process claim. And I think that's true in general of the district court's order. Now, I'll suggest candidly that there is fairly threadbare and anemic recital of the qualified immunity assertion and defendant's own motion to dismiss at the district court stage. And so, you know, the district court's analysis, to the extent that it conflates those questions, probably generates from the fact that in many instances, the defendant's, the appellant's, in this instance, the appellant's own defense tends to Well, but you have the burden. I mean, they raise it and then you have the burden. That's right. So I take it, in your view, you presented a robust prong to analysis on all the claims. Is that your position? I couldn't have put it better myself, Judge. Did you do that in district court? We did so, absolutely. And if the district court really didn't pick up on that, what should we do with that? Do we have to do work that the district court didn't do? Or should it go back to the district court? What should happen? I guess I'm slightly confounded by the proposition that the district court, in any sort of reversible way, conflated these two prongs. There are, obviously, there are arguments advanced. Well, you said it was anemic. I mean, we're at least at the anemic point. Oh, and I'm sorry if I was misunderstood. I was referring to the assertion of qualified immunity in the appellant's motions to dismiss. Well, I don't think they have to do a lot to put the burden on you and then on the district court to address the issue. So you're saying the district court, well, it certainly wasn't as robust as your arguments. Would you at least agree with that? I would defer to the appellate judge's assessment of the district court's. Well, let's say we're not grading homework. We're not saying it should have been better. I mean, in the district court's order, if the court does not mention the clearly established prong for certain claims, do you agree that that's reversible? Reversible may be remandable for the district court to complete the thought, but if the court, you know, does not mention an analysis at all of the second prong, what are we supposed to do with that on appeal? Well, I think it would probably depend on the particular constitutional challenge that the plaintiffs advance. You know, I guess probably the most persuasive way that I can answer Your Honor's question is to assert simply that with respect to each of the plaintiff's claims, and I'd love to address those in their particularity, with respect to each of the plaintiff's claims, we believe that there is clearly established law that would put a reasonable state actor in the defendant's position on notice of the impermissibility of the conduct that we allege. I just ask you, maybe this goes more to the procedural due process claim than the others, but as I read the complaint, it alleges that the school district was responsible for removing J.S. from the classroom or from the school. That's the one part of the complaint where I wonder if you did enough on personal participation. Yeah, so I think in a prediscovery setting, we're obviously limited to information and belief. I think the complaint does allege that the decision to summarily and informally suspend J.S., Judge Rossman correctly summarized the sequence of events that occurred subsequent to the Step family making its formal Title IX complaint. He was initially sent home from school altogether with only a sticky pad of instruction and then eventually confined to the library. Where's the new part of it? I mean, that's my question. It seems like you're saying the district did this. But you've got a bunch of defendants on the hook right now. Yeah. And why should they be on the hook for this? So with respect to that particular claim, the procedural due process claim, the Second Amendment complaint. And the removal from the classroom, not the segregation part of it, but the removal. Absolutely, absolutely. The Second Amendment complaint alleges that initially, and I might get these dates slightly wrong, but in late August, the Step family initially contacted Superintendent Lockhart and Principal Anderson. They then coordinated a second meeting with those same two administrators, as well as at least Defendant Russell. The Second Amendment complaint alleges, again, on information and belief, that the board members, including Superintendent Lockhart and Principal Anderson, made this decision in coordination. That's consistent with the allegation that it was Defendant Russell, who's one of the board members, who contacted plaintiffs after. All right. So you're saying that the complaint says that these individual defendants in concert made the decision to remove JS. That's absolutely right. All right. We can study the complaint.  And follow up on that, just to kind of keep the ball rolling. On your procedural due process claim, do you have a case clearly establishing that the segregation policy, not the removal, but just the policy itself, was a due process deprivation? In other words, I'm not asking about the equal protection claim. I'm just asking about the procedural due process claim. Is there a case, Supreme Court or Tenth Circuit, and what is it, that would make that out to be a due process deprivation? And so I think, both in the interest of economy and candor, the most fair response is to say that we think our equal protection claim, with respect to the segregation policy itself, is our strongest argument. And that argument on which the law is most clearly established. All right. But are you saying that you don't have a procedural due process case? I think that the most closely, the most factually analogous case, with respect, again, to the policy itself, if I understand. Yes. With respect to the policy itself, and on the particular procedural due process question, I think the most closely, factually analogous cases that we could probably point to would be Couture and Goss. And I recognize that those concern the summary, I'm sorry, the decision to suspend a student in the absence of process. But I think that the general constitutional principle is espoused there, that deprivation of educational opportunity must be occasioned by the minimum guarantees of the due process clause. And, again, I'm quite eager to return to the basic question of the equal protection clause, with respect to the segregation policy, for the reason that I think there the law is conclusively well established. And I'll certainly take the court's hint, if it would prefer that I discuss those other. I'll do more than a hint. So on the equal protection claim, as I understand it, it seems to be based on the segregation policy. But is it also based on how Mr. McClain treated? That's absolutely right. I'm not talking about the claim against Mr. McClain. We can get to that, because you've got a separate equal protection. I'm talking about whether the treatment of the child in the classroom is relevant to the equal protection claim against the other defendants. And my answer to that is absolutely, yes. And I understand exactly the distinction that Your Honor is drawing. We have, with respect to equal protection, we have a claim that targets basically all of the appellants here in the absence of McClain. That concerns the promulgation, implementation, and enforcement of the policy. We have a second equal protection claim that targets those same defendants in addition to McClain. And I apologize, a point of clarification. I said all of the appellants to the exclusion of McClain. It's actually with respect to the equal protection claim. It's to the exclusion of McClain and Blair and Bryant, those being the Title IX defendants. So our policy-based equal protection claim targets Superintendent Lockhart, Principal Anderson, and the board defendants. Our harassment-based equal protection claim targets, obviously, McClain. And then under an admittedly slightly different analysis, specifically with respect to direct or personal involvement versus acquiescence or deliberate indifference, on a slightly different theoretical basis, we state an equal protection claim against McClain, the board defendants, Anderson, and Lockhart. McClain, obviously, the factual basis for that equal protection claim is the pervasive sexual harassment of JS and gender bullying of JS. With respect to the remaining defendants, the basis of that harassment-based equal protection claim concerns their having received adequate and, indeed, ample notice, both of the invidious effects of the segregation policy itself and the pervasive and severe gender bullying and sexual harassment that McClain was targeting at JS, and thereafter taking no remedial action, as would be appropriate under the circumstances. The former- Is the board responsible? Did you allege that the board is responsible for policy implementation? We did. We also allege, again, on information and belief, that each of the individual board members personally and directly participated, not just in adopting the policy prior to the outset of the 2022 school year, but additionally, in ratifying that policy after they were provided notice, not just of JS and the stepfamilies' mistreatment and complaints, but provided notice at the September 6th board meeting by a group of concerned parents who came there both to protest the policy and to particularly shed light and raise concerns about the way that McClain was targeting JS for gender animus. Does that answer Your Honor's question? I think so. I mean, as Judge Mathison said, we have to go back and study this very closely, but I was just trying to make sure I understood whether you were relying on the board members' legal status in your allegations to establish supervisory liability, or there was personal- Right, no- You're also doing the personal- Yeah, so it's not a responding at superior theory. Yeah. We allege they personally and directly involved themselves in the adoption, approval, and ratification of the policy itself, and that they also demonstrated what the case law tends to refer to as deliberate indifference toward complaints and notice of JS's mistreatment by McClain in the classroom. I think- Can I ask you- that's actually a good segue to this question. The defendants point to paragraph 51 of the amended complaint, and there the allegation, among other things, says that JS didn't really understand some of the terminology that Mr. McClain-  And so they think that that- Yeah. Helps them in their position, but in response to that, if you could, well, respond to that, but also if we have to address that in clearly established law terms, what's your position? Yeah, so this is obviously a novel argument. I think it's one that is out of step with equal protection analysis in general. There's certainly, in the Title VII and to the extent that the Section 1983 jurisprudence is borrowed from Title VII, there are elemental requirements for a sexual harassment-based equal protection claim. Those are, of course, that there is discriminatory harassment. The second, and I think this is where the appellants are hanging their hat on the issue that Judge Matheson refers to, is that that conduct is unwelcome. And the third is that it creates a pervasive and severe environment, hostile to education. As I understand it, the appellants don't even challenge the first or third of those prongs. They only challenge whether the conduct was unwelcome. And the basis of that is that J.S. did not immediately understand the meaning of certain epithets and slurs that McLean used to belittle him in front of his classmates. I think that it would be a peculiar interpretation of equal protection under the clearly established prong if the state actor was able to essentially insulate himself by using more syllables than his 11-year-old victim. And I think the unwelcome analysis in the Title VII context is entirely different. It's a question of whether or not the victim of sexual harassment is even aware of discriminatory remarks that were made in most instances outside of his or her presence. Here, there can be no doubt, and I appreciate that amount of time. I'd love to briefly conclude that remark. Here, there can be no doubt that the harassment of J.S. was unwelcome. He broke down in tears repeatedly in front of his classmates. He and other parents notified the steps of their concerns. The argument, and just quickly, and I want to be very brief, I appreciate this. In Dovey-Hutchinson and in so many other cases which clearly establish the basis of Plaintiff's claims here, the court recognizes that even facially gender-neutral harassment, especially when combined in the context of other gender-specific harassment, can be the kind of stuff that creates a hostile environment. So in general, the Qualified Immunity Doctrine exists to protect errors in judgment by good faith state actors. What we're alleging here is that these actors did or should have known that segregating classrooms, harassing students, is wrong. It's constitutionally impermissible. Let me ask you on the substantive due process claim against Mr. McClain. How can you rely on the abated decision for clearly established law when the court, in that case, ultimately didn't find a constitutional violation? Isn't our circuit law such that in that circumstance, the case can't be relied upon for clearly established law? And so again, I think the most honest answer to Your Honor's question is that abated is probably not sufficient to establish clearly established law on the substantive due process claim. I think much like Judge Matheson himself sort of intimated earlier, probably the fastest horse on our substantive due process claim is going to be that the conduct which we allege, in its totality, and noting that almost every single case that disposes of a substantive due process claim on the basis of qualified immunity does so on the fully developed factual record at the summary judgment posture. Totality of the allegations on the face of the second amended complaint involve J.S.'s relative immaturity, his very young age, him being entrusted to the care, supervision, and instruction of an adult male who, on the face of our allegations, motivated by subjective animus, one might say hate, one might say bigotry, intentionally and deliberately targeted him and bullied him at a period of his life that he himself, as the appellant's defense itself illustrates, at a point in his life that he himself, his sexuality, his gender identity is so nascent and underdeveloped that he has a difficult time even apprehending why an adult would both assign to him these sorts of epithets and also encourage his classmates to ridicule him along second thoughts. Well, you've got in count for substantive due process alleged against the school district and McLean. And of course, we're not talking about the school district at this point because we're on qualified immunity, correct? And then count five, you've got substantive due process against the board members Lockhart and Anderson. Would you agree that the claim against Lockhart and Anderson, the board members, is different, really different in kind from the claim against Mr. McLean? And do I understand, Your Honor, correctly that we're talking specifically about the substantive due process claim?  Yes. Substantive due process. Absolutely. Those are different in nature. Well, you're talking about the totality of circumstances and so forth, and I'm thinking, well, wait a minute. That concerns only McLean. We have to take each defendant on their own. It concerns only McLean, and in fact, and I would hate to misstate the record on this point, I don't believe that the substantive due process claims against the other defendants now once survived the motion to dismiss the district court. Oh, okay. You're right. You're right. I believe it is only against Mr. McLean. So this is the only substantive due process we're dealing with now? On this appeal, substantive due process concerns only Mr. McLean. Thank you for correcting me on that. My pleasure, and thus the court has additional questions. We would just urge that it affirm the decision below. Thank you, counsel. Thank you. I think we're going to call it a day. We've given both of you a little extra time, and we appreciate the argument. There's a lot to digest here. Thank you again. The case will be submitted.